SCHOOL DISTRICT OF OMAHA ET AL. *v.* UNITED STATES ET AL.

No. 76–705. Decided June 29, 1977

PER CURIAM.

This school desegregation case involves the School District of Omaha, Neb. The District Court in a comprehensive opinion extensively reviewed the evidence presented by the parties, and recognized that there was considerable racial imbalance in school attendance patterns. Applying a legal standard which placed the burden of proving intentional segregative actions on the respondents, and which regarded the natural and foreseeable consequences of petitioners' conduct as "neither determinative nor immaterial" but as "one additional factor to be weighed," the District Court concluded that the respondent had not carried the burden of proving a deliberate policy of racial segregation. 389 F. Supp. 293. On appeal, the Court of Appeals rejected the legal standard applied by the District Court, 521 F. 2d 530, stating that a "presumption of segregative intent" arises from actions or omissions whose natural and foreseeable result is to "bring about or maintain segregation." *Id.,* at 535. Reviewing the facts found by the District Court concerning faculty assignment, student transfers, optional attendance zones, school con-

struction, and the deterioration of one high school in the district, the Court of Appeals generally accepted these factual findings. In each instance, however, it concluded that there was sufficient evidence under the legal standard it adopted to shift the burden of proof to the petitioners. Finding that in no instance had the petitioners carried their rebuttal burden, the Court of Appeals remanded for the formulation of a systemwide remedy. We denied certiorari. 423 U. S. 946.

Following the explicit instruction of the Court of Appeals, the District Court promulgated an extensive plan involving, among other elements, the systemwide transportation of pupils. On petitioners' appeal, the Court of Appeals for the Eighth Circuit affirmed. 541 F. 2d 708.

In *Washington* v. *Davis*, 426 U. S. 229, 239 (1976), we said:

"[O]ur cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional *solely* because it has a racially disproportionate impact."

We restated and amplified the implications of this holding in *Arlington Heights* v. *Metropolitan Housing Dev. Corp.*, 429 U. S. 252 (1977).

Neither the Court of Appeals nor the District Court, in addressing itself to the remedial plan mandated by the earlier decision of the Court of Appeals, addressed itself to the inquiry required by our opinion in *Dayton Board of Education* v. *Brinkman, ante,* p. 406, in which we said:

"If such violations are found, the District Court in the first instance, subject to review by the Court of Appeals, must determine how much incremental segregative effect these violations had on the racial distribution of the Dayton school population as presently constituted, when that distribution is compared to what it would have been in the absence of such constitutional violations. The

remedy must be designed to redress that difference, and only if there has been a systemwide impact may there be a systemwide remedy." *Ante,* at 420.

The petition for certiorari is accordingly granted, the judgment of the Court of Appeals is vacated, and the case is remanded for reconsideration in the light of *Arlington Heights* and *Dayton.*

*It is so ordered.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissenting.

The Court's remand of this case for reconsideration in light of *Arlington Heights* v. *Metropolitan Housing Dev. Corp.,* 429 U. S. 252 (1977), and *Dayton Board of Education* v. *Brinkman, ante,* p. 406, is inappropriate because wholly unnecessary. The Court of Appeals concluded that "segregation in the Omaha School District was intentionally created and maintained by the defendants." 521 F. 2d 530, 532–533 (1975). The petitioners did not contest in the Court of Appeals the finding of the District Court that the Omaha public schools are segregated. *Ibid.* The Court of Appeals carefully reviewed the abundant evidence in the record bearing on segregative intent and concluded that the evidence justified a presumption that segregative intent permeated petitioners' policies concerning faculty assignment, student transfers, optional attendance zones, school construction, and the deterioration of the 96% black Tech High School. *Id.,* at 537–546. Relying on *Keyes* v. *School District No. 1, Denver, Colo.,* 413 U. S. 189, 210 (1973), the Court of Appeals further found that the petitioners did not rebut this presumption because they "failed to carry *their burden of establishing that segregative intent was not among the factors which motivated their actions.*" 521 F. 2d, at 536, 537 (emphasis supplied). We denied certiorari. 423 U. S. 946 (1975). When the case came before the Court

of Appeals for the second time a year later, the court explicitly reviewed its prior holding in light of our intervening decision in *Washington* v. *Davis*, 426 U. S. 229 (1976), and found nothing in that case to cause it to revise its earlier opinion. 541 F. 2d 708, 709 (1976).

*Arlington Heights, supra,* did not make new law, but only applied the holding of *Washington* v. *Davis* that discrimination must be purposeful to be unconstitutional. *Arlington Heights* interpreted *Washington* v. *Davis* to mean that an action in which an "invidious discriminatory purpose was a motivating factor" is unconstitutional, and that proof that a decision is "motivated in part by a racially discriminatory purpose" shifts the burden of proof to the alleged discriminator. 429 U. S., at 270–271, n. 21. The conclusion of the Court of Appeals that the defendants "failed to carry their burden of establishing that segregative intent was not among the factors which motivated their actions" was based on language from our decision in *Keyes, supra,* but it so faithfully applies the *Arlington Heights* formulation that it reads as if the Court of Appeals had anticipated precisely what *Arlington Heights* would hold five months later. I cannot imagine that the Court of Appeals will do, or properly can do, anything on remand except reaffirm its judgment with a recitation of its gratification that *Arlington Heights* had been correctly anticipated.

*Dayton, supra,* reaffirmed the already well-established principle that the scope of the remedy must be commensurate with the scope of the constitutional violation. *Ante,* at 420. In this case, the District Court ordered a comprehensive decree to remedy the effects of past discrimination, and the Court of Appeals affirmed. As is evident from a reading of the first Court of Appeals opinion describing the massive systemwide intentional segregation in the Omaha School District, a comprehensive order is entirely appropriate. A less comprehen-

sive order would simply not remedy fully the unconstitutional conditions that have been found to exist in the school system. I would affirm the judgment of the Court of Appeals.

MR. JUSTICE STEVENS, dissenting.

For the reasons stated by MR. JUSTICE BRENNAN, I cannot join the Court's summary disposition of this case. I would deny certiorari.