572 F.2d 1219
 16 Fair Empl.Prac.Cas. 894, 16 Empl. Prac.
Dec. P 8115
Richard Jerome JOHNSON, Appellant,
v.
Clifford L. ALEXANDER, Jr., Individually and in his official
capacity as Secretary of the Army, Lt. Gen. R. R. Taylor,
Individually and in his official capacity as Surgeon General
of the United States Army, and Maj. Lee Wilson, Individually
and in his official capacity as Commanding Officer of St.
Louis Armed Forces Examining and Entrance Station, Appellees.
 No. 77-1250.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 16, 1977.
Decided Feb. 17, 1978.
Rehearing and Rehearing En Banc Denied May 4, 1978.
 
 Christopher Hexter, Schuchat, Cook & Werner, St. Louis, Mo., argued and made rebuttal, David A. Lander, The Legal Aid Society of the City and County of St. Louis, St. Louis, Mo., on brief, for appellant.
 Wesley D. Wedemeyer, Asst. U. S. Atty., St. Louis, Mo., argued, Barry A. Short (former U. S. Atty.), St. Louis, Mo., on brief, for appellees.
 Before HEANEY, WEBSTER and HENLEY, Circuit Judges.
 HENLEY, Circuit Judge.
 
 
 1
 In November, 1975 plaintiff, Richard Jerome Johnson, a black male, undertook to enlist in the United States Army at St. Louis, Missouri. His application was rejected by reference to Paragraphs 2-34(a) and 2-34(b) of Army Regulation 40-501 which will be described in due course.
 
 
 2
 In July, 1976 plaintiff commenced this action in the United States District Court for the Eastern District of Missouri alleging that the provisions of the regulation that have been mentioned invidiously discriminate against blacks and are either unconstitutional or are invalid under the provisions of 42 U.S.C. § 1981 or § 2000e-16, or both. Plaintiff sought both class and individual relief. Named as defendants were Martin Hoffman, Secretary of the Army (Clifford L. Alexander, Jr. has replaced Martin Hoffman); Lieutenant General R. R. Taylor, Surgeon General of the Army; and Major Lee Wilson, Commanding Officer of the St. Louis Armed Forces Examination and Entrance Station (AFEES).
 
 
 3
 The defendants moved alternatively for a dismissal of the complaint or for summary judgment. The district court (The Honorable John F. Nangle, District Judge) granted the motion for summary judgment and dismissed the complaint. Johnson v. Hoffman, 424 F.Supp. 490 (E.D.Mo.1977). This appeal followed.
 
 
 4
 Paragraph 2-34(a) and 2-34(b), hereinafter at times Paragraph "a" and "b", of Army Regulation 40-501 set out certain criteria by reference to which an applicant for enlistment in the Army may be rejected.
 
 
 5
 Both of the paragraphs refer to character or behavior disorders or to departures from generally accepted behavorial norms. Paragraph "a" mentions "frequent encounters with law enforcement agencies or antisocial attitudes or behavior." It states that while such disorders are not a cause for administrative rejection of an application for enlistment, they are tangible evidence of an impaired characterological capacity to adapt to military service. Paragraph "b" refers to such things as immaturity, instability, personality inadequacy and dependency as demonstrated by repeated inability to maintain reasonable adjustment in school, with employers, with fellow workers and other societal groups.
 
 
 6
 While plaintiff does not appear to contend that the challenged paragraphs of the regulation were purposely designed to discriminate against blacks or members of other minority groups or that the paragraphs are being discriminatorily applied to such persons, he does contend that in actual operation they are discriminatory and unlawful. Plaintiff complains principally about the fact that Paragraph "a" calls for a disclosure of arrests of the applicant by the police even though the arrests were not followed by convictions of crime.
 
 I.
 
 7
 Before stating the facts we will mention the constitutional and statutory provisions involved in the case.
 
 
 8
 The fifth amendment to the Constitution prohibits the federal government from depriving any person of life, liberty or property without due process of law.
 
 
 9
 The thirteenth amendment prohibits slavery or involuntary servitude, except as punishment for crime of which the person involved has been duly convicted.
 
 
 10
 The fourteenth amendment is directed at the states and their political subdivisions. It contains a "due process" clause identical to that appearing in the fifth amendment, and it also contains the familiar clause that prohibits the states from denying to any person the equal protection of the laws. Although the fifth amendment does not contain an express "equal protection" clause, it is now settled that the concept of due process of law prohibits the federal government from discriminating against any person on such irrelevant and invidious grounds as race, color, religion, or national origin. Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).
 
 
 11
 Both the thirteenth and fourteenth amendments authorize Congress to implement them by appropriate legislation. The thirteenth amendment was adopted in 1865, and in 1866 Congress adopted the Civil Rights Act of that year, part of which has come down to us as 42 U.S.C. § 1981, which is as follows:
 
 
 12
 All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
 
 
 13
 In 1868 Congress declared that the fourteenth amendment had been validly ratified by the requisite number of states, and in 1870 Congress adopted new civil rights legislation which included a virtual reenactment of the Civil Rights Act of 1866. See Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3d Cir. 1971).
 
 
 14
 As is well known, Title VII of the Civil Rights Act of 1964 prohibits racial and other types of discrimination in employment in industries covered by the Act. The Act was substantially amended and broadened by the Equal Employment Opportunity Act of 1972, P.L. 92-261, 86 Stat. 103. Section 11 of that Act added § 717 to Title VII of the 1964 statute, and the new section has been codified as 42 U.S.C. § 2000e-16. We will refer to it as § 717. Section 717(a) is as follows:
 
 
 15
 (a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin.
 
 
 16
 Subsection (b) places primary enforcement responsibility on the United States Civil Service Commission. However, subsection (e) provides that nothing in the statute is to be construed as relieving any federal agency or official from existing obligations relating to equal employment opportunity in government service.
 
 
 17
 As has been seen, § 717(a) refers to 5 U.S.C. § 102, and that statute defines the military departments of the United States as being the Army, Navy and Air Force. That definition is also found in 10 U.S.C. § 101(7), and 10 U.S.C. § 101(4) defines the "armed forces" of the United States as being the Army, Navy, Air Force, Marine Corps and Coast Guard.
 
 II.
 
 18
 We turn now to the facts of the case; and since we are required to view them in the light most favorable to the plaintiff, our statement of the facts is based essentially on what is set out in the affidavit that plaintiff filed in opposition to the motion of the defendants and in plaintiff's brief.
 
 
 19
 In late November, 1975 plaintiff applied for enlistment in the Army. He was interviewed initially by a recruiting officer in a black neighborhood in St. Louis and was referred to AFEES where he presented himself on or about November 25, 1975.
 
 
 20
 As of that time plaintiff had had a number of encounters with Missouri law enforcement agencies. He had been confined for a time as a juvenile in the facility located at Booneville, Missouri; this seems to have been in 1973 and during the period of his confinement he made some use of marijuana.
 
 
 21
 After plaintiff's release from Booneville he was the subject of three adult arrests, none of which resulted in a criminal conviction. One of those arrests may have been on a charge of homicide, and in connection with that arrest plaintiff was held in jail in St. Louis for a period of thirteen months after which he was released. Of course, plaintiff was not able to work during the period of his confinement.
 
 
 22
 It appears that plaintiff dropped out of school without completing his high school education, and his employment record has been marked by a number of "lay-offs." It does not appear, however, that plaintiff has been discharged from any job that he has held.
 
 
 23
 At AFEES plaintiff passed the physical and basic mental examinations required of all applicants. At some stage in the proceedings, perhaps in the course of plaintiff's interview with a Dr. Meyer, plaintiff's arrest and employment record came to light as did the fact that plaintiff had not graduated from high school. Dr. Meyer recommended that plaintiff's application be rejected for the time being and that no further application of plaintiff be considered for a period of eighteen months. Dr. Meyer's recommendation was reviewed and concurred in by a psychiatrist, Dr. Arney, and the application of plaintiff was in fact rejected.
 
 
 24
 The action taken at AFEES was reviewed at a higher administrative level by two psychiatrists, one of whom recommended that plaintiff be accepted for enlistment and the other of whom concurred in the original determination that for the time being plaintiff should not be accepted as an enlistee. The original determination adverse to plaintiff was allowed to stand.
 
 
 25
 Finally, the matter was taken before the Surgeon General of the Army, and the records in connection with plaintiff's application were reviewed at that level by a consultant in psychiatry and by a neurologist. The final determination of the Surgeon General was that the original decision made at AFEES should be upheld. This suit followed.
 
 
 26
 Before filing the suit plaintiff presented himself to Dr. James D. McClure, Jr., a psychiatrist who is a member of the faculty of the Washington University School of Medicine in St. Louis. Dr. McClure interviewed plaintiff in some depth and concluded that he could make a satisfactory soldier. Dr. McClure was also of the opinion that the Army's evaluation of plaintiff was superficial, and was of the further view that the Army can evaluate applicants for enlistment and eliminate behavior risks without probing into prior arrest records that have not resulted in convictions of crime. The views of Dr. McClure are set out in his affidavit which was part of the record in the district court.
 
 III.
 
 27
 In his discussion of the case Judge Nangle rejected the contentions of the defendants that the controversy tendered by plaintiff was not justiciable and that the action was precluded by the doctrine of sovereign immunity. The defendants do not complain of those rejections, and we accept them.
 
 
 28
 While the district judge thought that the controversy was a justiciable one, he declined to consider whether the paragraphs of Army Regulation 40-501 that have been mentioned had been applied properly to the plaintiff as an individual, and the judge confined himself to a consideration of the legal validity of Paragraph 2-34(a).[1] We agree with that approach.
 
 
 29
 The conclusions of the district court may be summarized as follows: (1) Section 717(a) of Title VII of the Civil Rights Act of 1964 does not apply to the uniformed components of the armed services or to applicants for enlistment in those components. (2) The protection against discrimination afforded to blacks and to members of other racial or ethnic minorities by § 1981 does not extend beyond the equal protection of the laws guaranteed by the fifth and fourteenth amendments to the Constitution. (3) Since Paragraph 2-34(a) was not adopted with any discriminatory intent, it is not unconstitutional simply because in operation it may bear harder on members of minority groups than on white people. In reaching his final conclusion the district judge relied on Washington v. Davis, supra, which involved a constitutional attack on a written test that all applicants for employment by the Washington, D. C., Police Department were required to take, and which was allegedly failed by a disproportionate number of black applicants.[2]
 
 
 30
 In determining that Title VII of the Civil Rights Act of 1964, as amended, does not apply to applicants for enlistment in the armed forces, the district court relied to some extent on legislative history and adverted to the fact that at relevant times there were millions of members of the armed forces.
 
 
 31
 As to the scope of 42 U.S.C. § 1981, Judge Nangle recognized that the statute was passed originally in 1866 in implementation of the thirteenth amendment and prior to the effective date of the fourteenth amendment. However, after so stating, he went on to say (424 F.Supp. at 494):
 
 
 32
 . . . Congress, however, incorporated the 1866 Act into the Fourteenth Amendment and the 1870 Civil Rights Act based thereon. United States v. Wong Kim Ark, 169 U.S. 649, 675, 18 S.Ct. 456, 42 L.Ed. 890 (1898); Young v. International Telephone & Telegraph Co., 438 F.2d 757 (3d Cir. 1971). Under these circumstances, the Court must conclude that claims under § 1981 parallel claims under the Fourteenth Amendment. Since the conduct complained of herein is not prohibited by the Fourteenth Amendment, Washington v. Davis, supra, the Court must conclude that it is not prohibited by § 1981.
 
 IV.
 
 33
 For reversal, counsel for plaintiff contend that Washington v. Davis, supra, is not applicable to this case in view of the provisions of amended Title VII and in view of § 1981. The position of counsel is that the district court should either have applied § 717(a) as such to applicants for enlistment in the armed forces or should have incorporated amended Title VII standards into plaintiff's § 1981 claim.[3] As indicated, there is no allegation that Paragraph 2-34(a) is applied in a discriminatory manner.
 
 
 34
 From our consideration of the record and of the briefs and arguments it is clear to us that at the heart of plaintiff's claim is the premise that the relationship between the government and a uniformed member of the Army, Navy, Marine Corps, Air Force or Coast Guard is that of employer-employee, and that an applicant for enlistment in one of those armed services is an applicant for "employment" and should have his application judged by Title VII standards. We cannot accept that premise and accordingly cannot accept counsels' conclusions based thereon.
 
 
 35
 While military service possesses some of the characteristics of ordinary civilian employment, it differs materially from such employment in a number of respects that immediately spring to mind,[4] and the peculiar status of uniformed personnel of our armed forces has frequently been recognized by the courts. See, for example, the following cases which, among others, were cited by the district court in its discussion of the question of whether the case presented a justiciable controversy: Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); Gilligan v. Morgan, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); Orloff v. Willoughby, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953). See also the discussion of the status of an enlistee in the Army that appears in the rather old case of In re Grimley, 137 U.S. 147, 11 S.Ct. 54, 34 L.Ed. 636 (1890).
 
 
 36
 The great "military departments" of this country referred to in 5 U.S.C. § 102 include not only uniformed personnel of various ranks and grades but also of thousands of men and women employed in civilian capacities.
 
 
 37
 There is no question that Congress intended for § 717(a) to afford protection against discrimination to civilian employees and applicants for civilian employment in the Departments of the Army, Navy and Air Force. But we think that if Congress had intended for the statute to apply to the uniformed personnel of the various armed services it would have said so in unmistakable terms.[5] We agree with the district court that neither Title VII nor its standards are applicable to persons who enlist or apply for enlistment in any of the armed forces of the United States.
 
 
 38
 There are some concluding observations that we would make. As has been indicated, the screening criteria involved in this case were not discriminatorily motivated. They were not designed to keep racial or ethnic minorities out of the armed services, nor are they doing so. The criteria do not automatically or permanently deny to any otherwise eligible person an opportunity to join the armed service of his choice. They simply recognize the fact that a young person who has had numerous adverse encounters with law enforcement officers, or who has dropped out of school at an early stage of his education, or who cannot hold a job or get along with other people may be unlikely to perform satisfactorily in tightly structured military life.
 
 
 39
 As to the plaintiff as an individual, his case was considered at three administrative levels at least. His disqualification was not permanent, and the specified period of eighteen months during which his initial rejection would be in effect has long since expired.
 
 
 40
 The judgment of the district court is affirmed.
 
 
 
 [1]
 For some reason Judge Nangle made no reference in his well written opinion to Paragraph 2-34(b). However, we consider that the two subparagraphs involved in the case are essentially in pari materia, and that one of them is neither more nor less valid than the other
 
 
 [2]
 Washington v. Davis holds that in the absence of discriminatory intent a governmental requirement or prohibition does not offend constitutional concepts of equal protection simply because it may have a disparate effect on members of minority groups. That view has been approved recently by a majority of the Supreme Court in the following cases: School District of Omaha v. United States, 433 U.S. 667, 97 S.Ct. 2905, 53 L.Ed.2d 1039 (1977); Dayton Board of Education v. Brinkman, 433 U.S. 406, 97 S.Ct. 2766, 53 L.Ed.2d 851 (1977); and Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)
 
 
 [3]
 The claim of the plaintiffs in Washington v. Davis was based solely on the fifth amendment; they did not invoke Title VII, and the Supreme Court recognized that the standards of Title VII may be broader than those of the amendment invoked by plaintiffs. 426 U.S. at 246-48, 96 S.Ct. 2040. And, in a number of cases it has been held that Title VII standards are applicable to suits brought by blacks under § 1981. See, e. g., Patterson v. American Tobacco Co., 535 F.2d 257, 270 (4th Cir.), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); Waters v. Wisconsin Steel Works of International Harvester Co., 502 F.2d 1309, 1316 (7th Cir. 1974), cert. denied, 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1976); Brady v. Bristol-Meyers, Inc., 459 F.2d 621, 623-24 (8th Cir. 1972); Carter v. Gallagher, 452 F.2d 315, 323 (8th Cir. 1971), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972)
 
 
 [4]
 An enlisted man in the Army, for example, is not free to quit his "job," nor is the Army free to fire him from his employment. Additionally, the soldier is subject not only to military discipline but also to military law
 
 
 [5]
 We note that the term "military departments" as defined in 5 U.S.C. § 102 and in 10 U.S.C. § 101(7), and the term "armed forces," as defined in 10 U.S.C. § 101(4) are not interchangeable. Title 10 of the United States Code related generally to the military establishment of the United States; and 10 U.S.C. § 101(4) defines "armed forces" as being the Army, Navy, Air Force, Marine Corps and Coast Guard. The Marine Corps is an organization within the Department of the Navy, which is one of the "military departments" which Congress has defined. The Coast Guard is a military service and one of the armed forces of the United States which serves as a component of the Navy in time of war or when the President so directs. However, when the Coast Guard is not engaged in the service of the Navy it is an agency within the Department of Transportation, and in 1972 and prior thereto it was an agency in the Treasury Department. See 14 U.S.C. §§ 1 and 3, as amended in 1976