# COLUMBUS BOARD OF EDUCATION ET AL. *v.* PENICK

## ET AL.

No. A–134. Decided August 11, 1978

See: 583 F. 2d 787.

MR. JUSTICE REHNQUIST.

The Columbus, Ohio, Board of Education and the Superintendent of the Columbus public schools request that I stay execution of the judgment and the mandate of the Court of Appeals for the Sixth Circuit and execution of the judgment of the United States District Court for the Southern District of Ohio in this case pending consideration by this Court of their petition for certiorari. The Court of Appeals' judgment at issue affirmed findings of systemwide violations of the Equal Protection Clause of the Fourteenth Amendment on the part of the Columbus Board of Education, and upheld an extensive school desegregation plan for the Columbus school system. The remedy will require reassignment of 42,000 students; alteration of the grade organization of almost every elementary school in the Columbus system; the closing of 33 schools; reassignment of teachers, staff, and administrators; and the transportation of over 37,000 students. The 1978–1979 school year begins on September 7, and the applicants maintain that failure to stay immediately the judgment and mandate of the Court of Appeals will cause immeasurable and irreversible harm to the school system and the commu-

nity. The respondents are individual plaintiffs and a plaintiff class consisting of all children attending Columbus public schools, together with their parents and guardians.

This stay application comes to me after extensive and complicated litigation. On March 8, 1977, the District Court for the Southern District of Ohio issued an opinion declaring the Columbus school system unconstitutionally segregated and ordering the defendants to develop and submit proposals for a systemwide remedy. 429 F. Supp. 229. That decision predated this Court's opinions in three important school desegregation cases: *Dayton Board of Education* v. *Brinkman,* 433 U. S. 406 (1977); *Brennan* v. *Armstrong,* 433 U. S. 672 (1977); and *School District of Omaha* v. *United States,* 433 U. S. 667 (1977). In the lead case, *Dayton,* this Court held that when fashioning a remedy for constitutional violations by a school board, the court "must determine how much incremental segregative effect these violations had on the racial distribution of the . . . school population as presently constituted, when that distribution is compared to what it would have been in the absence of such constitutional violations. The remedy must be designed to redress that difference, and only if there has been a systemwide impact may there be a systemwide remedy." 433 U. S., at 420. The defendants moved that the District Court reconsider its violation findings and adjust its remedial order in light of our *Dayton* opinion. Upon such reconsideration, the District Court concluded that *Dayton* simply restated the established precept that the remedy must not exceed the scope of the violation. Since it had found a systemwide violation, the District Court deemed a systemwide remedy appropriate without the specific findings mandated by *Dayton* on the impact discrete segregative acts had on the racial composition of individual schools within the system. The Sixth Circuit affirmed. 583 F. 2d 787 (1978).

Prior to its submission to me, this application for stay was denied by MR. JUSTICE STEWART. While I am naturally reluctant to take action in this matter different from that

1350

taken by him, this case has come to me in a special context. Four days before the application for stay was filed in this Court, the Sixth Circuit issued its opinion in the *Dayton* remand. *Brinkman* v. *Gilligan*, 583 F. 2d 243 (1978) (*Dayton IV*). Pursuant to this Court's opinion in *Dayton*, the District Court for the Southern District of Ohio had held a new evidentiary hearing on the scope of any constitutional violations by the Dayton school board and the appropriate remedy with regard to those violations. It had concluded that *Dayton* required a finding of segregative intent with respect to each violation and a remedy drawn to correct the incremental segregative impact of each violation. On that basis the District Court had found no constitutional violations and had dismissed the complaint. The Sixth Circuit reversed, characterizing as a "misunderstanding" the District Court's reading of our *Dayton* opinion. *Dayton IV, supra,* at 246. It reinstated the systemwide remedy that it had originally affirmed in *Brinkman* v. *Gilligan*, 539 F. 2d 1084 (1976) (*Dayton III*), vacated and remanded *sub nom. Dayton Board of Education* v. *Brinkman*, 433 U. S. 406 (1977).

*Dayton IV* and the instant case clearly indicate to me that the Sixth Circuit has misinterpreted the mandate of this Court's *Dayton* opinion. During the Term of the Court, I would refer the application for a stay in a case as significant as this one to the full Court. But that is impossible here. The opinions of the District Court and the Court of Appeals total almost 200 pages of some complexity. It would be impracticable for me to even informally circularize my colleagues, with an opportunity for meaningful analysis, within the time necessary to act if the applicants are to be afforded any relief and the Columbus community's expectations adjusted for the coming school year.

I am of the opinion that the Sixth Circuit in this case evinced an unduly grudging application of *Dayton*. Simply the fact that three Justices of this Court might agree with me

would not necessarily mean that the petition for certiorari would be granted. But this case cannot be considered without reference to the Sixth Circuit's opinion in *Dayton IV*. In both cases the Court of Appeals employed legal presumptions of intent to extrapolate systemwide violations from what was described in the Columbus case as "isolated" instances. 583 F. 2d, at 805. The Sixth Circuit is apparently of the opinion that presumptions, in combination with such isolated violations, can be used to justify a systemwide remedy where such a remedy would not be warranted by the incremental segregative effect of the identified violations. That is certainly not my reading of *Dayton* and it appears inconsistent with this Court's decision to vacate and remand the Sixth Circuit's opinion in *Dayton III*. In my opinion, this questionable use of legal presumptions, combined with the fact that the Dayton and Columbus cases involve transportation of over 52,000 schoolchildren, would lead four Justices of this Court to vote to grant certiorari in at least one case and hold the other in abeyance until disposition of the first.

On the basis of the District Court's findings, some relief may be justified in this case under the principles laid down in *Dayton*. Two instances where the school system set up discontiguous attendance areas that resulted in white children being transported past predominantly black schools may be clear violations warranting relief. But the failure of the District Court and the Court of Appeals to make any findings on the incremental segregative effect of these violations makes it impossible for me to tailor a stay to allow the applicants a more limited form of relief.

In their response, the plaintiffs/respondents also take an "all or nothing" approach and do not offer any suggestions as to how the mandate and judgment of the Court of Appeals can be stayed only in part consistent with the applicants' legal contentions. I therefore have no recourse but to grant or deny the stay of the mandate and judgment in its entirety.

The last inquiry in gauging the appropriateness of a stay is the balance of equities. If the stay is granted the respondent children's opportunity for a more integrated educational experience is forestalled. How many children and how integrated an educational experience are impossible to discern because of the failure of the courts below to inquire how the complexion of the school system was affected by specific violations.

In contrast, the impact of the failure to grant a stay on the applicants is quite concrete. Extensive preparations toward implementation of the desegregation plan have taken place, but an affidavit filed in this Court by the Superintendent of the Columbus public schools indicates that major activities remain for the four weeks before the new school term begins. These activities include inventory, packing, and moving of furniture, textbooks, equipment, and supplies; completion of pupil reassignments, bus routes and schedules, and staff and administrative reassignments; construction of bus storage and maintenance facilities; hiring and training of new busdrivers; and notification to parents of pupil reassignments and bus information. Such activities cannot be easily reversed. Most important, on September 7 there will occur the personal dislocations that accompany the actual reassignment of 42,000 students, 37,000 of whom will be transported by bus.

The Columbus school system has severe financial difficulties. It is estimated that for calendar year 1978 the system will have a cash deficit of $9.5 million, $7.3 million of which is calculated to be desegregation expenses. Under Ohio law school districts are not permitted to operate when cash balances fall to zero and it is now projected that the Columbus school system will be forced to close in mid-November 1978. Financial exigency is not an excuse for failure to comply with a court order, but it is a relevant consideration in balancing the equities of a temporary stay.

Given the severe burdens that the school desegregation order

will place on the Columbus school system and the Columbus community in general, and the likelihood that four Justices of this Court will vote to grant certiorari in this case, I have decided to grant the stay of the judgment and mandate of the Court of Appeals for the Sixth Circuit and the judgment of the District Court.

As this Court noted in *Dayton,* "local autonomy of school districts is a vital national tradition." 433 U. S., at 410. School desegregation orders are among the most sensitive encroachments on that tradition, not only because they affect the assignment of pupils and teachers, but also because they often restructure the system of education. In this case the desegregation order requires alteration of the grade organization of virtually every elementary school in Columbus. As this Court emphasized in *Dayton,* judicial imposition on this established province of the community is only proper in the face of factual proof of constitutional violations and then only to the extent necessary to remedy the effect of those violations.

It is therefore ordered that the application for a stay of the judgment and mandate of the Court of Appeals for the Sixth Circuit and the judgment of the District Court for the Southern District of Ohio be granted pending consideration of a timely petition for certiorari. The stay is to remain in effect until disposition of the petition for certiorari. If the petition is granted, the stay shall remain in effect until further order of this Court.