[No. 36120-5-II. Division Two. March 25, 2008.]

WHIDBEY GENERAL HOSPITAL, *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Roger L. Hillman, Carla M. Dewberry*, and *Justin Dolan* (of *Garvey Schubert Barer*), for appellant.

*Robert M. McKenna, Attorney General,* and *Heidi A. Irvin, Assistant,* for respondent.

¶1 HUNT, J. — Whidbey General Hospital appeals the trial court's summary judgment dismissal of its business and occupation (B&O) tax refund claim against the Washington Department of Revenue (Department). Whidbey argues that the income it receives from the Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) is tax deductible because (1) CHAMPUS is not an employee benefit plan according to *Black's Law Dictionary,* RCW 82.04.293, and the Employee Retirement Income Security Act of 1974 (ERISA)[1]; (2) the legislature did not intend to tax CHAMPUS income; (3) military members are not employees; (4) for purposes of Washington's B&O tax, CHAMPUS is an entitlement plan akin to Medicare and Medicaid rather than an "employee benefit plan"; and (5) Congress and the Department of Defense (DOD) have preempted Washington's B&O tax on CHAMPUS.

¶2 We hold that military members are not "employees" for purposes of RCW 82.04.4297 and that CHAMPUS is a government entitlement program for the benefit of military members. Accordingly, we reverse the trial court's grant of summary judgment to the Department, we rule as a matter of law that Whidbey is entitled to summary judgment, and we remand to the trial court to order the Department to refund Whidbey the B&O tax it paid on its CHAMPUS income.

[1] 29 U.S.C. § 1001.

## FACTS

### I. CHAMPUS Background

¶3 Before Congress enacted CHAMPUS, medical benefits for military members of the armed forces and their dependents were "fragmentary" outside military medical facilities. *Barnett v. Weinberger*, 260 U.S. App. D.C. 304, 818 F.2d 953, 956-57 (1987). An "estimated 40 percent of [military member] dependents could not obtain medical care in military facilities, primarily because of overcrowding, physician shortages, or residence outside the areas served by those facilities." *Barnett*, 818 F.2d at 956 (citing S. Rep. No. 1878, at 4 (1956); H.R. Rep. No. 1805, at 2, 4 (1956)).

¶4 In order to address " 'one of the most serious morale problems facing our Armed Forces,' " Congress enacted CHAMPUS, as well as other statutes, to provide uniform and accessible medical care to military members and their dependents. *Barnett*, 818 F.2d at 957 (quoting H.R. Rep. No. 1805, at 2). CHAMPUS allows the federal government to contract with civilian hospitals and physicians to provide medical care to military members and their dependents at civilian hospitals. 32 C.F.R. § 199.17.

### II. Assessment of B&O Tax on CHAMPUS Income

¶5 The federal government contracts with Whidbey General Hospital, under CHAMPUS, to provide medical care to military members and their dependents serving and living on the island.

¶6 The Department conducted an audit of Whidbey for the tax period from January 1, 1995, through March 31, 1999. As a result, on January 16, 2001, Whidbey paid $102,723 in B&O taxes on income it had received from the federal government under CHAMPUS.

¶7 On December 23, 2005, Whidbey filed a notice of appeal in superior court, seeking a refund of the B&O taxes it had paid on its CHAMPUS income.[2] On February 2, 2007, Whidbey and the Department filed cross motions for summary judgment. Both parties agreed that there were no disputed facts.

¶8 On March 2, the trial court denied Whidbey's summary judgment motion and granted summary judgment to the Department. The trial court ruled that (1) RCW 82.04-.4297 was unambiguous, (2) CHAMPUS was an employee benefit plan for purposes of RCW 82.04.4297, (3) federal law does not preempt Washington's B&O tax on hospitals' income received from CHAMPUS, and (4) Whidbey was not entitled to deduct CHAMPUS income from its gross income on which the B&O tax was calculated.

¶9 Whidbey appeals.

## ANALYSIS

¶10 The State of Washington imposes a B&O tax on numerous businesses, including hospitals, operating in the state. RCW 82.04.260. The State allows health organizations to deduct from their gross income subject to the B&O tax those amounts the organization receives from the federal government for providing health services, *unless* the federal government pays these amounts under an "employee benefit plan." RCW 82.04.4297.

¶11 RCW 82.04.4297 is titled "**Deductions—Compensation from public entities for health or social welfare services—Exception.**" It provides:

> In computing tax there may be deducted from the measure of tax amounts received from the United States or any instrumentality thereof or from the state of Washington or any municipal corporation or political subdivision thereof as compensation for, or to support, health or social welfare services

---

[2] To obtain judicial review in superior court, Whidbey first had to pay the disputed taxes in full under RCW 82.03.180.

rendered by a health or social welfare organization or by a municipal corporation or political subdivision, except *deductions are not allowed under this section for amounts that are received under an employee benefit plan.*

(Emphasis added.)

¶12 Whidbey and the Department agree that Whidbey is a health organization that receives payments from the federal government under CHAMPUS for providing health services to military members and their dependents. They disagree, however, on whether CHAMPUS is an "employee benefit plan" subject to the B&O tax by virtue of RCW 82.04.4297. This dispute ultimately turns on a question of statutory interpretation.[3] Thus, we must determine whether the trial court correctly interpreted RCW 82.04.4297 and 32 C.F.R. § 199.17(7)(i).

### I. STATE B&O TAX—FEDERAL HEALTH SERVICES DEDUCTION EXCEPTION

¶13 Whidbey argues that the income it receives from CHAMPUS does not fall under the "employee benefit plan"

---

[3] This appeal concerns the following issues:

1. Is CHAMPUS a federal "employee benefit plan" under RCW 82.04.4297 and, therefore, taxable for B&O purposes despite being income received from the federal government for providing health services to military personnel and their beneficiaries?

2. Is the Department's definition of "employee benefit plan" consistent with the plain meaning, dictionary definition, and other statutes' definition of this phrase?

3. Should military members be considered employees for the purposes of defining the phrase "employee benefit plan"?

4. Is CHAMPUS a health plan similar to Medicare and Medicaid or is it an employee benefit plan?

5. If the term is ambiguous, does the legislative history of RCW 82.04.4297 indicate whether CHAMPUS is an employee benefit plan?

6. Has Congress preempted Washington's ability to apply B&O tax to a hospital's income received from CHAMPUS?

7. Has the DOD preempted the State of Washington's ability to apply the B&O tax to CHAMPUS income?

8. If the federal government has preempted the State's B&O tax on CHAMPUS, does the net revenue tax, broad range of business activity, preemption exception apply?

9. Is Whidbey entitled to trial and appellate court costs and attorneys fees?

In light of our holding, we do not address issues five through eight.

exception to the RCW 82.04.4297 deduction from gross income subject to state B&O tax and, therefore, the payments it receives from CHAMPUS are deductible. Whidbey contends that this statutory deduction exception does not apply because (1) CHAMPUS is not an "employee benefit plan" according to *Black's Law Dictionary*, RCW 82.04.293, and ERISA; (2) the legislature did not intend to impose a state B&O tax on CHAMPUS income; (3) military members are not "employees" for purposes of "employee benefit plans" subject to B&O tax; (4) CHAMPUS is not a benefit plan, nor is it comparable to private insurance; and (5) Congress and the DOD have preempted Washington's B&O tax on civilian hospitals' CHAMPUS receipts.

¶14 The Department responds that CHAMPUS is an employee benefit plan, for which there has been no federal preemption, because (1) ERISA applies only to private plans and it excludes CHAMPUS as a government plan from its "employee benefit plan" definition; (2) the legislature intended to impose a B&O tax on CHAMPUS receipts; (3) military members are employees of the federal government; (4) CHAMPUS is similar to private benefit plans; and (5) Congress and the DOD have not expressed a clear and manifest purpose to preempt the Washington B&O tax on CHAMPUS receipts by civilian hospitals.

A. Standard of Review

¶15 We review a statute's construction, a question of law, de novo. *Health Ins. Pool v. Health Care Auth.*, 129 Wn.2d 504, 507, 919 P.2d 62 (1996). When interpreting statutory language, our goal is to carry out the legislature's intent. *Simpson Inv. Co. v. Dep't of Revenue*, 141 Wn.2d 139, 148, 3 P.3d 741 (2000). To protect the State from unanticipated losses, we narrowly construe tax statutes conferring deductions. *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 49-50, 905 P.2d 338 (1995).

¶16 Where a statute is unambiguous, we determine legislative intent from the statutory language alone. *Waste*

*Mgmt. of Seattle, Inc. v. Wash. Utils. & Transp. Comm'n,*
123 Wn.2d 621, 629, 869 P.2d 1034 (1994). Whidbey and the
Department agree that RCW 82.04.4297 is unambiguous.[4]
We agree that the statute is unambiguous, but because
RCW 82.04.4297 does not define the phrase "employee
benefit plan," we first look to the plain meaning of the
statute's words. *Lacey Nursing,* 128 Wn.2d at 53.

## B. "Employee Benefit Plan" Definitions

¶17 Whidbey argues that CHAMPUS is not an "employee
benefit plan" under RCW 82.04.4297 because (1)
*Black's Law Dictionary* and RCW 82.04.293 refer to
ERISA's "employee benefit plan" definition, which Whidbey
argues excludes CHAMPUS; (2) the legislature did not
intend to impose the B&O tax on CHAMPUS income; (3)
military members are not "employees" within the meaning
of "employee benefit plan"; and (4) CHAMPUS is not comparable
to private insurance. We find Whidbey's arguments
persuasive.

### 1. *Black's Law Dictionary*

¶18 When a statute fails to define a term, we look to
the regular dictionary definition when a term has a well-accepted,
ordinary meaning. *City of Spokane v. Dep't of
Revenue,* 145 Wn.2d 445, 454, 38 P.3d 1010 (2002). When
"an otherwise common word is given a distinct meaning in
a technical dictionary or other technical reference and has
a well-accepted meaning within the industry," we turn to

---

[4] Nevertheless, Whidbey argues that if we believe the term "employee benefit plan" is ambiguous, legislative history indicates that CHAMPUS falls within the general deduction. The Department counters that RCW 82.04.4297's legislative history shows that our state legislature intended to tax government employee health plans, including CHAMPUS.

Only when the statutory language is ambiguous do we go beyond the statutory language to attempt to understand the legislature's intent. *Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n,* 133 Wn.2d 229, 241-42, 943 P.2d 1358 (1997). Because we agree with the parties that the phrase is not ambiguous, we do not consider legislative history.

the technical, rather than general purpose, dictionary to resolve the word's definition. *Spokane,* 145 Wn.2d at 454. *Webster's Dictionary* does not define "employee benefit plan." And we know of no well-accepted, ordinary meaning of the term.

¶19 As Whidbey notes, however, *Black's Law Dictionary,* a technical reference, provides the following definition for "employee benefit plan":

> [E]mployee benefit plan. A written stock-purchase, savings, option, bonus, stock-appreciation, profit-sharing, thrift, incentive, pension, or similar plan solely for employees, officers, and advisers of a company. • The term includes an employee-welfare benefit plan, an employee-pension plan, or a combination of those two. See 29 [U.S.C.] § 1002(3) [(ERISA)]. But the term excludes any plan, fund, or program (other than an apprenticeship or training program) in which no employees are plan participants.

BLACK'S LAW DICTIONARY 564 (8th ed. 2004).

¶20 Whidbey argues that we should use ERISA's definition to decide whether CHAMPUS is an "employee benefit plan" under RCW 82.04.4297, because *Black's Law Dictionary* references and derives its "employee benefit plan" definition from ERISA's 29 U.S.C. § 1002(3). ERISA's definition section, 29 U.S.C. § 1002, provides the following definition of "employee benefit plan":

> For purposes of this subchapter:
>
>   . . . .
>
> (3) The term "employee benefit plan" or "plan" means an employee welfare benefit plan[5] or an employee pension benefit

---

[5] ERISA defines an "employee welfare benefit plan" as

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B)

plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

But contrary to Whidbey's argument, 29 U.S.C. § 1002(3) does not expressly exclude CHAMPUS from its "employee benefit plan" definition. Thus, Whidbey's argument that CHAMPUS is not an "employee benefit plan" as defined in *Black's Law Dictionary* fails. That ERISA separately impliedly excludes governmental CHAMPUS from its coverage, to further Congress's intent to regulate *private* plans,[6] does not thereby exclude CHAMPUS from ERISA's "employee benefit plan" definition section.[7] *See* 29 U.S.C. §§ 1003(b)(1), 1002(32).

## 2. RCW 82.04.293

¶21 Whidbey next argues that we should look to RCW 82.04.293's definitions to determine whether CHAMPUS is an "employee benefit plan" under RCW 82.04.4297. RCW 82.04.293(3)(c), which regulates international investment management services, provides:

An "employee benefit plan," which includes any plan, trust, commingled employee benefit trust, or custodial arrangement that is subject to the employee retirement income security act of 1974, as amended, 29 U.S.C. Sec. 1001 et seq., or that is described in sections 125, 401, 403, 408, 457, and 501(c)(9) and (17) through (23) of the internal revenue code of 1986, as

---

any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).
29 U.S.C. § 1002(1).

[6] As the Department correctly notes, ERISA excludes government plans from its coverage because Congress enacted it to provide oversight to private employee benefit plans. *See Gualandi v. Adams*, 385 F.3d 236, 242-43 (2d Cir. 2004) (Congress excluded all government plans from ERISA and decided it would later determine whether to regulate government plans because house subcommittees had already undertaken detailed studies focusing on the private sector and there was inadequate information on how regulation would impact the public sector employee plans (citing H.R. Rep. No. 93-533, at 8-9 (1973); 119 Cong. Rec. 130 (1973) (statement of Sen. Williams); 29 U.S.C. § 1231).

[7] Moreover, Congress excluded government plans from ERISA coverage because it felt more research should be undertaken. *See Gualandi*, 385 F.3d at 242-43.

amended, or a similar plan maintained by a state or local government, or a plan, trust, or custodial arrangement established to self-insure benefits required by federal, state, or local law.

Whidbey is technically correct that RCW 82.04.293(3)(c) does not expressly include CHAMPUS in its "employee benefit plan" definition. But Whidbey's argument that this definition applies for B&O tax purposes is incorrect because (1) RCW 82.04.293(3)(c) does not provide an exclusive definition of "employee benefit plan" and (2) the statute's reference to ERISA fails for the same reasons that *Black's Law Dictionary*'s reference to ERISA fails.

¶22 That RCW 82.04.293(3)(c)'s definition "includes" employee benefit plans subject to ERISA does not thereby *exclude* employee benefit plans not subject to ERISA. Nor does RCW 82.04.293(3)(c) expressly exclude CHAMPUS from its "employee benefit plan" definition. As we previously noted, ERISA's coverage extends to private, rather than governmental, plans; but in so limiting its coverage, ERISA does not exclude CHAMPUS, a governmental plan, from its "employee benefit plan" definition. 29 U.S.C. §§ 1003(b)(1), 1002(32). Thus, Whidbey fails to sustain its argument that RCW 82.04.293(3)(c)'s reference to ERISA excludes CHAMPUS from the definition of an "employee benefit plan."

## C. CHAMPUS

¶23 Because the dictionary and other statutory definitions do not provide a definitive answer as to whether CHAMPUS is an "employee benefit plan" under RCW 82-.04.4297, we next turn to the CHAMPUS program itself. Whidbey argues that CHAMPUS is not an "employee benefit plan" because (1) military members are not employees of the government and (2) unlike private insurance, CHAMPUS is analogous to government health services, which fall within the B&O tax deduction, but not within the "employee benefit plan" exception to this deduction. The

Department counters that CHAMPUS is a government employee benefit plan because (1) military members are federal government employees and (2) CHAMPUS closely resembles private insurance. We find Whidbey's arguments persuasive.

### 1. Military members not "employees" under RCW 82.04.4297

¶24 Whidbey argues that military members are not "employees" "in any common and ordinary sense of the word" because they (1) are not bound by civilian contract law, (2) are not entitled to the same rights as civilians, (3) have a legal right to health care, and (4) cannot leave their jobs at will.[8] For purposes of RCW 82.04.4297, we agree.

---

[8] The Department counters that military members are "employees" because (1) courts routinely refer to them as "employees" in opinions, (2) the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, refers to them as "employees," and (3) our state legislature has not distinguished between civilian and military employees in RCW 82.04.4297. Although the Department is correct that courts sometimes refer to military members as "employees," it fails to identify a case that identifies military members as "employees" in an actual employment context. For example, although the Ninth Circuit used the term "military employees" in its opinion, (1) the plaintiff in the case was a civilian contractor and (2) the court was careful to distinguish between civilian employees and military members. *Lopez v. Johnson*, 333 F.3d 959 (9th Cir. 2003).

The Department also cites the following cases that refer to military members as "employees": *Miller v. Albright*, 523 U.S. 420, 118 S. Ct. 1428, 140 L. Ed. 2d 575 (1998) (reviewing the constitutionality of a statute which imposed requirements on children born out of wedlock seeking citizenship through their parent's status); *Franklin v. Massachusetts*, 505 U.S. 788, 112 S. Ct. 2767, 120 L. Ed. 2d 636 (1992) (addressing whether the United States president was subject to court review under the Administrative Procedure Act for deciding that military personnel serving overseas counted toward their "homes of record" for reapportionment purposes); *Am. Foreign Serv. Ass'n v. Garfinkel*, 490 U.S. 153, 109 S. Ct. 1693, 104 L. Ed. 2d 139 (1989) (determining whether the director of the Information Security Oversight Office of Congress and the director of Central Intelligence violated the Continuing Resolution for Fiscal Year 1988 Act); *In re Marriage of Kraft*, 119 Wn.2d 438, 832 P.2d 871 (1992) (holding that the husband's military disability pay was not an asset subject to distribution in a divorce); *Ma'ele v. Arrington*, 111 Wn. App. 557, 45 P.3d 557 (2002) (reviewing admission of scientific evidence during a civil trial for damages from an automobile collision). Additionally, although we previously referred to the plaintiff as a "military employee" in *Ma'ele* when reviewing his civil negligence claim, our opinion does not explain whether Ma'ele was a military member or a civilian contractor with the military. *See Ma'ele*, 111 Wn. App. at 560.

¶25 As Whidbey correctly asserts, and the Department concedes, common law employment and contract principles do not apply to military members. *Bell v. United States*, 366 U.S. 393, 401, 81 S. Ct. 1230, 6 L. Ed. 2d 365 (1961) (common law rules governing private contracts have no place in the area of military pay; a soldier's entitlement to pay is dependent on statutory right); *see also N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 650-51, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995) (the federal statute, ERISA, regulating private employee welfare and benefit plans does not require employers to provide any given set of minimum benefits, but instead controls the administration of benefit plans); *Mier v. Owens*, 57 F.3d 747, 748 (9th Cir. 1995) (Title VII's discrimination prohibition does not apply to military members); *Barnett*, 818 F.2d at 957 (military members and their dependents have "a full-fledged" statutory right to medical care); *Johnson v. Alexander*, 572 F.2d 1219, 1223-24 (8th Cir. 1978) (recognizing the peculiar status of military members and noting that a military member is not free to quit the military).

¶26 We have found no published opinions addressing whether military members are "employees" for purposes of RCW 82.04.4297. But we note that other courts have analyzed whether military members are "employees" for purposes of other statutes that apply to employees outside the military. *See, e.g., Johnson*, 572 F.2d at 1223-24 (while acknowledging that military service possesses some of the characteristics of ordinary civilian employment, rejecting the idea that military members are "employees" for purposes of Title VII, 42 U.S.C. § 2000e-16 (citing *Parker v. Levy*, 417 U.S. 733, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974); *Gilligan v. Morgan*, 413 U.S. 1, 93 S. Ct. 2440, 37 L. Ed. 2d 407

The Department's argument is not persuasive. Courts' passing references to military members as "employees," when not addressing employment issues, are unpersuasive here, particularly when courts are careful to distinguish military service from civilian employment when reviewing employment issues.

(1973); *Orloff v. Willoughby,* 345 U.S. 83, 73 S. Ct. 534, 97 L. Ed. 842 (1953))).

¶27 The Department further asserts that military members are "employees" under RCW 82.04.4297 because the legislature has not distinguished between civilian employees and military members. In our view, however, this argument weakens the Department's statutory construction argument. In determining whether military members are subject to "employment" and are, therefore, "employees" for purposes of Title VII, the *Johnson* court held, "[I]f Congress had intended for the statute to apply to the uniformed personnel of the various armed services it would have said so in unmistakable terms." 572 F.2d at 1224. Reasoning that military members have a "peculiar status," frequently recognized by the courts, the Eighth Circuit held that military members are not "employees" or "employee applicants" for purposes of Title VII. *Johnson,* 572 F.2d at 1223-24. Absent evidence that our state legislature intended to include military members in its definition of "employees," we similarly conclude that RCW 82.04.4297's deduction exception term "employee" does not apply to military members.[9]

¶28 Accordingly, we hold that military members are not "employees" for purposes of RCW 82.04.4297 because (1) our legislature did not include military members in RCW 82.04.4297's definition of "employees"; (2) military members' service, having its own "peculiar status," is markedly distinct from civilian employment; and (3) other courts have determined that military members are not "employees" for purposes of statutes that regularly apply to employment.

---

[9] The Department argues that military members are employees for RCW 82.04.4297 purposes because Congress has included the military as employees of the government for the Federal Tort Claims Act. The Department is correct that for purposes of the Federal Tort Claims Act military members are government employees. 28 U.S.C. § 2671. Again, this undercuts rather than supports the Department's position. As the *Johnson* court noted, because military members are traditionally not considered employees, the courts will not treat them as employees unless Congress clearly shows that the statute applies to military members. *Johnson,* 572 F.2d at 1223-24. The Federal Tort Claims Act applies to military members because Congress clearly included them in its "employee" definition. In contrast, RCW 82.04.4297 makes no mention of military members as employees.

## 2. CHAMPUS not a "benefit plan" under RCW 82.04.4297

¶29 In reviewing CHAMPUS claims, courts have concluded that CHAMPUS, Medicare, and Medicaid "function essentially the same." *United States v. Whiteside*, 285 F.3d 1345, 1346 (11th Cir. 2002); *see also Barnett*, 818 F.2d at 968 (Medicare is "closely analogous" to CHAMPUS). Under the CHAMPUS regulations, a person entitled to Medicare benefits is not eligible for CHAMPUS benefits. 10 U.S.C. § 1086(c). Thus, the CHAMPUS and Medicare programs are intertwined. Unlike civilian employee benefit plans, Congress funds CHAMPUS through its annual appropriation act. 32 C.F.R. § 199.1(e). Additionally, military members have a right to medical services, where civilian employees do not have a right to an employee benefit plan. *See Barnett*, 818 F.2d at 957.

¶30 Finally, the CHAMPUS regulations distinguish the program from employee benefit programs, noting that though

> similar in structure in many of its aspects, CHAMPUS is not an insurance program in that it does not involve a contract guaranteeing the indemnification of an insured party against a specified loss in return for a premium paid. Further, CHAMPUS is not subject to those state regulatory bodies or agencies that control the insurance business generally.

32 C.F.R. § 199.1(d).

¶31 Both the Department and Whidbey agree that Medicare and Medicaid are health plans that are tax deductible under RCW 82.04.4297, not employee benefit plans. Because CHAMPUS is analogous to Medicare and Medicaid, we hold that CHAMPUS is not an "employee benefit plan" for purposes of RCW 82.04.4297.[10] Therefore, under RCW 82.04.4297, Whidbey is entitled to deduct from its gross income, subject to the B&O tax, the income it received from

---

[10] Having so held, we need not address the parties' remaining arguments, including Whidbey's federal preemption claim.

CHAMPUS. Accordingly, Whidbey is entitled to a refund of this tax that it paid to the Department.

## II. ATTORNEY FEES AND COSTS

¶32 Whidbey requests (1) trial "court costs, and applicable attorney's fees, if any" and (2) "an award of any applicable appellate costs and attorney's fees under RAP 14.3 and RAP 18.1." Br. of Appellant at 37.

### A. Trial

¶33 In general, a trial court may award attorney fees under a statute or a contract. *See Culinary Workers & Bartenders Union, Local No. 596 v. Gateway Cafe, Inc.*, 91 Wn.2d 353, 372, 588 P.2d 1334 (1979). But Whidbey cites no statute or contract right entitling it to attorney fees at trial. Therefore, we deny Whidbey's request for trial court attorney fees.

¶34 But by virtue of our reversal, Whidbey is now the prevailing party at trial and, therefore, it is entitled to its trial court costs under CR 54(d)(1) and RCW 4.84.030. Accordingly, we grant Whidbey's request for trial court costs in an amount to be determined by the trial court on remand.

### B. Appeal

¶35 The Department concedes that if Whidbey prevails on appeal, Whidbey is entitled to appellate costs under RAP 14.3. Because Whidbey is the prevailing party, we accept the Department's concession and grant Whidbey's request for costs on appeal under RAP 14.1 and 14.3.

¶36 The Department does not, however, concede that Whidbey is entitled to attorney fees under RAP 18.1. Instead, the Department argues that Whidbey "has not cited any applicable law that would allow it to recover attorney fees or costs for pursuing a tax refund action under

RCW 82.32.180, and the tax code provides no such remedy." Br. of Resp't at 50. We agree with the Department on this point.

¶37 Under RAP 18.1, a party is entitled to recover reasonable attorney fees on appeal if (1) applicable law grants the party a right to recover fees and (2) the party devotes a section of its brief to the request, unless a statute specifies that the request is to be directed to the trial court. Because Whidbey has failed to cite applicable law creating a right to recover attorney fees and to devote a section of its brief to the request,[11] we deny Whidbey's request for attorney fees on appeal.

### III. Conclusion

¶38 We hold that (1) military members are not "employees" for purposes of RCW 82.04.4297; (2) CHAMPUS is not an "employee benefit plan" for purposes of RCW 82.04.4297; and (3) therefore, Whidbey's CHAMPUS income is not subject to Washington's B&O tax. Accordingly, we reverse the trial court's grant of summary judgment to the Department, grant summary judgment to Whidbey on its claim for a refund of the B&O tax it paid to the Department on its CHAMPUS income, and remand to the trial court to determine the amount of this refund.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

---

[11] *See* Br. of Appellant at 37 (requesting attorney fees or expenses in the last paragraph of the brief's conclusion section); *see also Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.,* 134 Wn.2d 692, 952 P.2d 590 (1998) (the separate brief section for attorney fees or expenses is mandatory).