Tommie W. TAYLOR and Larry C. Peyton, Plaintiffs,

v.

TELETYPE CORPORATION, Defendant,

James Bibbs, et al., Intervenors.

No. LR–C–77–65.

United States District Court, E.D. Arkansas, W.D.

June 18, 1982.

On Motion to Amend and/or Clarify Sept. 20, 1982.

John T. Lavey, Lavey & Harmon, Perlesta A. Hollingsworth, Little Rock, Ark., for plaintiffs.

G. Ross Smith, Bill S. Clark, Friday, Eldredge & Clark, Little Rock, Ark., for defendant.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

Pending before the Court in this Title VII race discrimination suit are the individual claims of a number of class members. A pre-trial conference was held on April 7, 1982, to discuss the procedure for litigating those claims. At that conference it was agreed by all parties that the remaining claims would be referred to a magistrate for resolution, after the Court made rulings on two pending questions of law. First, the Court must determine whether the remaining class claimants must independently establish a prima facie case. Second, the Court must rule on the defendant's motions to dismiss a number of individual claims. Pursuant to the Court's order of April 8, 1982, the parties have briefed the two issues, and they are now ripe for adjudication.

The issues must be analyzed in the context of the history of this litigation. The case was initially tried by the Honorable Richard S. Arnold in the latter part of July and the first of August, 1979. It followed *Hoard v. Teletype Corp.,* 450 F.Supp. 1059 (E.D.Ark.1978), the Honorable Gerald W. Heaney, sitting by designation. *Hoard* considered the allegations that the defendant discriminated against two separate classes of black employees. Class I consisted of all black employees who alleged racial discrimination in discharges from December 3, 1971, to September 6, 1977. A number of discharged employees subsequently opted into Class I. Class II consisted of all black employees who alleged discrimination in promotions since December 3, 1971. The court held that the plaintiffs did not establish a prima facie case of discrimination with respect to Class I, but that they did establish a prima facie case with respect to the allegations of discriminatory promotions, Class II. Judge Arnold ruled that the findings in *Hoard* were *res judicata* in this case.

The suit before Judge Arnold involved sixteen individual claims. In addition, a class was certified and defined as follows:

Those black employees of the defendant who were demoted on or after February 28, 1972, including both bargaining-unit and non-bargaining-unit employees, and including those persons still employed by defendant and those employees no longer employed by defendant.

The court ruled, with respect to the class as a whole, "that the plaintiffs have made a prima facie case with respect to black employees demoted between February 28, 1974, and the end of 1976. No such prima facie case has been made with respect to demotions in 1977, 1978, and 1979." 475 F.Supp. at 964. In addition, Judge Arnold found for the plaintiffs on four individual claims.

In his opinion on remedies, 478 F.Supp. 1227, Judge Arnold permanently enjoined

the defendant "from discriminating against any individual with respect to his or her compensation, terms, conditions, privileges of employment, or in any other manner, because of such individual's race." *Id.* at 1228. With respect to the remaining class claims, the Court rejected the plaintiffs' request for the computation of back pay on a classwide basis. "Each demotion turns on its facts, and the defendant is entitled to litigate each individual claim on its own merits. Back pay will be awarded or denied on an individual basis to class members who make claims." *Id.* at 1230. Subsequently, a notice was sent out to all black demotees of the defendant during the relevant time period. It is the claims of the individuals who filed claims in response to that notice that are currently pending before the court.

On appeal the Eighth Circuit Court of Appeals affirmed the finding of classwide discrimination, concluding that "the evidence cited by the district court, together with the layoff statistics and other miscellaneous evidence, supports the prima facie finding of discrimination." 648 F.2d 1129 at 1135 (8th Cir.1981). The injunction was vacated by the Court of Appeals:

> The issuance of the injunction rested on relatively weak, although sufficient, evidence of classwide discrimination, and on the finding of discrimination in four individual cases. Weighing these findings against the finding of no discrimination for the three years immediately preceding the injunction, we have serious doubt as to the appropriateness of this kind of relief. We need not finally determine the propriety of the permanent injunction in this appeal, however, for the district court has yet to decide many of the individual claims for relief. Until those cases are decided, the question of whether Teletype engaged in widespread discrimination, or merely a few isolated illegal acts, remains open.

*Id.* at 1136 (footnotes omitted).

Teletype filed a petition for a writ of certiorari with the Supreme Court which was denied on November 2, 1981. 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386. The Eighth Circuit issued its mandate on November 11, 1981. Judge Arnold recused upon remand, and the case was assigned to this Court.

## BURDEN OF PROOF OF CLASS MEMBERS

█ The issue before the Court is whether the individual class claimants have the initial burden of presenting evidence to establish the existence of a prima facie case of racial discrimination. Under the standards articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff in a Title VII case ordinarily has the initial burden of establishing the prima facie case. The burden then shifts to the employer to prove the existence of non-discriminatory reasons for the treatment of the employee. At that point, the plaintiff may then attempt to prove that the advanced non-discriminatory reasons are merely pretextual. The defendant maintains that the class claimants must adhere to those standards in litigating their claims before the magistrate.

The plaintiffs argue that the initial burden of establishing a prima facie case has already been met. It is their position that Judge Arnold's findings of classwide discrimination, and the affirmance of that finding by the Eighth Circuit Court of Appeals, satisfies the initial requirement of *McDonnell Douglas.* In support of this view, the plaintiffs direct the Court's attention to *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1976). In *Teamsters,* the United States brought a Title VII action against an employer and a union. The District Court held that the employer engaged in a pattern and practice of discrimination in violation of Title VII with regard to hiring, promotions and transfers. The Court also found that the union had violated Title VII by a discriminatory seniority system in the collective bargaining agreement. Both the company and the union were permanently enjoined from committing further violations of Title VII.

With respect to individual relief, the District Court divided the discriminatees into three separate classes. One class consisted of thirty persons "who had produced 'the most convincing evidence of discrimination and harm.'" 431 U.S. at 331, 97 S.Ct. at 1852. The Court ordered that those persons were to be offered the opportunity to fill jobs with competitive seniority dating back to July 2, 1965, the effective date of Title VII. A second subclass consisted of persons who were "very possibly the object of discrimination." *Id.* at 332, 97 S.Ct. at 1853. The court decreed that these persons were entitled to fill vacancies with competitive seniority as of January 14, 1971, the date on which the Government had filed its lawsuit. The third subclass consisted of individuals as to whom there was "no evidence to show that these individuals were either harmed or not harmed." *Id.* The court ordered that they be considered for any vacancies ahead of general applicants but behind the other two subclasses.

The Fifth Circuit Court of Appeals affirmed the basic liability findings of the District Court. 517 F.2d 299. With respect to remedies, however, the court held that the individual relief ordered by the District Court was inadequate. The District Court's attempt to trisect the class was rejected, and the court held that all discriminatees were entitled to bid for future jobs on the basis of their company seniority. This award of retroactive seniority was to be limited only by a qualification date formula. The Court of Appeals then remanded to the District Court for an evidentiary hearing for application of these remedial principles. The Supreme Court granted the company's and the union's petitions for certiorari.

The Supreme Court affirmed the finding of company discrimination, but reversed as to the union. With respect to the question of remedies, the company argued before the Supreme Court that:

> [N]o employee should be entitled to relief until the Government demonstrates that he was an actual victim of the company's discriminatory practices .... The petitioner's first contention is in substance

that the Government's burden of proof in a pattern-or-practice case must be equivalent to that outlined in *McDonnell Douglas v. Green.* Since the Government introduced specific evidence of company discrimination against only some forty employees, they argue that the District Court properly refused to award retroactive seniority to the remainder of the class of minority incumbent employees. *Id.* at 357, 97 S.Ct. at 1865.

The Court rejected the company's argument, and discussed the burden of proof in the following language:

> The plaintiff in a pattern-or-practice action is the Government, and its initial burden is to demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant.
>
> \*     \*     \*     \*     \*     \*
>
> If an employer fails to rebut the inference that arises from the Government's prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy. Without any further evidence from the Government, a court's finding of a pattern or practice justifies an award of prospective relief....
>
> When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief. The petitioners' contention in this case is that if the Government has not, in the course of proving a pattern or practice, already

brought forth specific evidence that each individual was discriminatorily denied an employment opportunity, it must carry that burden at the second, "remedial" stage of trial. That basic contention was rejected in the *Franks* [*v. Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444] case. As was true of the particular facts in *Franks,* and as is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial. The employer cannot, therefore, claim that there is no reason to believe that its individual employment decisions were discriminatorily based; it has already been shown to have maintained a policy of discriminatory decisionmaking.

The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. The Government need only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination. As in *Franks,* the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons. See 424 U.S., at 773 n.32 [96 S.Ct. at, 1268 n. 32].

\*　\*　\*　\*　\*　\*

On remand, therefore, every post-Act minority group applicant for a line-driver position will be presumptively entitled to relief, subject to a showing by the company that its earlier refusal to place the applicant in a line-driver job was not based on its policy of discrimination.

*Id.* at 360–2, 97 S.Ct. at 1867 (footnotes omitted).

The plaintiffs urge that the burden of proof standards articulated by the Supreme Court for the remand of *Teamsters* be applied to the litigation of Phase II of this case. They argue that Judge Arnold's finding that the defendant engaged in classwide discrimination with respect to the demotions of black employees between February 28, 1974, and December 31, 1976, is sufficient to establish the existence of the prima facie case envisioned in *Teamsters.* In addition, the plaintiffs note that the Eighth Circuit affirmed the finding of classwide discrimination, specifically citing footnote 45 of *Teamsters* wherein the Supreme Court noted:

The holdings in *Franks* that proof of a discriminatory pattern and practice creates a rebuttable presumption in favor of individual relief is consistent with the manner in which presumptions are created generally. Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof. These factors were present in *Franks.* Although the prima facie case did not conclusively demonstrate that all of the employer's decisions were part of the proved discriminatory pattern and practice, it did create a greater likelihood that any single decision was a component of the overall pattern. Moreover, the finding of a pattern or practice changed the position of the employer to that of a proved wrongdoer. Finally, the employer was in the best position to show why any individual employee was denied an employment opportunity. Insofar as the reasons related to available vacancies or the employer's evaluation of the applicant's qualifications, the company's records were the most relevant items of proof. If the refusal to hire was based on other factors, the employer and its agents knew best what those factors were and the extent to which they influenced the decisionmaking process.

*Id.* at 359–60, 97 S.Ct. at 1866 (citations omitted).

On the basis of the clear statement of the law in *Teamsters,* the Court concludes that the plaintiffs are not required to shoulder the initial burden of establishing a prima

facie case in the evidentiary hearing before the magistrate. Judge Arnold's finding of classwide discrimination will suffice to meet that initial burden. The individual claimant need only establish his or her membership in the class; i.e., that he or she was a black employee of the defendant demoted during the relevant time period. The burden will then be upon the defendant to establish that the demotion was based on lawful, non-discriminatory reasons.

The defendant makes essentially five arguments in support of its position that the claimants have the initial burden of proof. First, it argues that *Teamsters* required more than a finding of classwide discrimination. Instead, a finding of classwide *liability* is required before the burden shifts to the defendant. In support of this interpretation, the defendant points to the language in *Teamsters* that the plaintiff must first prove a "pattern or practice" of discrimination. The defendant's emphasis is misplaced. The *Teamsters* opinion never equated the requirement of proving "a pattern or practice" of discrimination with the requirement of establishing liability for the class as a whole. Instead, the Court only required that the plaintiff prove that the defendant had maintained a policy of discrimination over a specified period of time. Indeed, the Court specifically rejected the company's claim that at the "remedial" stage of trial the plaintiff should be required to bring forth "specific evidence that each individual was discriminatorily denied an employment opportunity." *Id.* at 361, 97 S.Ct. at 1867.

This conclusion is evident from the record before the Court in *Teamsters.* The District Court had made the factual determination (a finding affirmed by the Supreme Court) that, with respect to the third subclass, there was no evidence that those individuals had been harmed by any discriminatory practice. In spite of that factual determination, the Supreme Court agreed with the Court of Appeals that no differentiation should be made between the various class claimants in litigating their claims in Phase II. A *classwide* finding of discrimination had already been made.

Second, the defendant argues that because the Eighth Circuit vacated the injunction in this case, there is no longer a finding of classwide discrimination. The defendant relies on the language of the Eighth Circuit in vacating the injunction that "[u]ntil those cases (the class claims) are decided, the question of whether Teletype engaged in widespread discrimination, or merely a few isolated illegal acts, remains open." 648 F.2d at 1136. This argument ignores that the Eighth Circuit also affirmed the finding of classwide discrimination in demotions for the years 1974, 1975 and 1976. While there was not evidence of "widespread discrimination" sufficient to satisfy the Court of Appeals that grounds for equitable relief existed, there was evidence of a policy of discrimination sufficient to satisfy the *Teamsters* standard of a prima facie case of classwide discrimination.

Third, the defendant argues that the "pattern or practice" of discrimination contemplated by the Court in *Teamsters* is more than a few isolated acts. The Court agrees. What a "pattern or practice" *does* require is a finding by the District Court, based on all the evidence before it, including statistical data and individual claims, that the employer maintained a policy of discrimination. Judge Arnold made such a finding, and it was affirmed by the Eighth Circuit.

Fourth, the defendant argues that its interpretation is supported by the language of the official notice that was sent to potential class members. The notice provided that the claimant "should state all facts of which you are aware which support your claim .... The Court may decide to hold a hearing and take testimony on some or all of the claims. Teletype will be given the opportunity to rebut each claim." This language, while it suggests that the claimants must initially set forth facts supporting their claim for relief, does not establish the legal burden of proof for litigating the claims. That burden of proof is established by the Supreme Court's interpretation of Title VII requirements.

Finally, the defendant argues that Judge Arnold's remedies opinion recognizes that the liability of class claimants remains an open question, with each claim to be separately litigated. It is true that there is no presumptive finding of liability. There is, however, a finding that members of the class are victims of racial discrimination, i.e., a presumptive finding of a prima facie case. Liability remains to be litigated, although the plaintiffs need not come forward with any evidence to establish their prima facie case.

## MOTIONS TO DISMISS

There are approximately 27 claims of class members awaiting resolution by the magistrate. The defendant has moved to dismiss a number of those claims.

### Hattie M. Bridges

The plaintiffs concede that the claim of Ms. Bridges should be dismissed. Accordingly, the motion to dismiss this claim will be granted.

### Sharon Greene and Paulette Hinton

Both of these claimants filed individual claims in the *Hoard* litigation. They opted into Class I (the discharge class). The *Hoard* court specifically held that their terminations were not the result of racial discrimination. 450 F.Supp. at 1064. The defendant now urges this Court to hold that their claims of discriminatory demotions are barred by the doctrine of *res judicata.*

The plaintiffs argue that the *res judicata* effect of *Hoard* does not extend to claims of discriminatory demotions. While Ms. Greene and Ms. Hinton were both terminated, they were also demoted. Thus, according to the plaintiffs' analysis, this Court is free to consider the demotion claims, without the preclusion of an estoppel by judgment.

The Court concludes that these two claims are not barred by *res judicata. Hoard* considered only the claims of employees who alleged discrimination in lack of promotion and/or termination. Claims based solely on demotions were not, and could not, have been litigated in that action. This is evident from the classes that were certified by Judge Heaney in *Hoard,* one dealing with promotions and one with discharges. Claimants could opt into either class for litigation of their individual claims. Both classes were certified for the period December 3, 1971, to September 6, 1977.

Judge Arnold ruled that the findings in *Hoard* were *res judicata* in this case. He certified a demotion class on June 5, 1979, for the period after February 28, 1974. Judge Heaney had made classwide findings with respect to both classes in *Hoard.* Despite those findings, which were ruled *res judicata* by Judge Arnold, and despite the fact that the time period covered by the *Hoard* classes and the *Taylor* class overlap, Judge Arnold made his own independent findings of classwide discrimination. Indeed, his finding of classwide discrimination with respect to the demotion class for 1974, 1975, and 1976 is contrary to Judge Heaney's finding that there was no classwide discrimination with respect to the discharge class for the years 1971–1977.

Of course, the Court must consider whether the dismissal with prejudice of the *individual* claims of Ms. Greene and Ms. Hinton, as members of the discharge class, bar their claim in this lawsuit. The defendant argues that the issue of discriminatory demotions *could* have been litigated in *Hoard,* and therefore is barred. In support of this argument, the defendant points to the claim of Richard Davis, a plaintiff in *Hoard,* and a member of the promotion class. Mr. Davis was demoted twice. Judge Heaney specifically ruled that the first demotion was not motivated by race, but that "[r]ace was a factor in his demotion on February 19, 1975 and in the failure of Teletype to repromote him to section chief when vacancies occurred." 450 F.Supp. at 1065. In conclusion of law 9, Judge Heaney stated that:

> Richard Davis, as a member of Class II, is entitled to relief. He is entitled to back pay from February 19, 1975 to the date he is reinstated to the position of section chief .... Moreover, he is to be reinstated as a section chief when the first

vacancy occurs in a section in which he has had prior experience. Teletype is enjoined from discriminating against Davis in the future with respect to his future advancement in the company.

*Id.* at 1066.

It is true that Judge Heaney did make factual determinations with respect to Davis' demotions. However, those determinations were only made in connection with the Court's analysis of Davis' lack of promotion. There was no formal adjudication of any claim of discriminatory demotion.

The *Hoard* opinion does not indicate whether Judge Heaney considered the circumstances surrounding the demotions of Ms. Greene and Ms. Hinton in reaching his conclusion that their discharges were non-discriminatory. It is not incumbent upon the Court to search the record and guess at the reasons for Judge Heaney's conclusions. In any event, the dismissal of their discharge claims does not affect their right to later assert demotion claims.

The Court's interpretation is supported by the case of Larry Peyton, an original plaintiff in this case whose claim was dismissed in *Hoard* because it was "not within the perimeter established in this Court's damage rulings." The defendant moved to dismiss Peyton from this lawsuit because of the *res judicata* effect of the *Hoard* dismissal. Judge Arnold denied the motion to dismiss stating:

It is not completely clear [from the *Hoard* opinion] whether [Peyton's] dismissal was intended to be on the merits, but probably it was based upon the Court's conclusion that Peyton's claim was for demotion, and therefore not within the promotion class certified in *Hoard.* This class is described at two points in the *Hoard* opinion, 450 F.Supp. at 1061, 1065 and in both instances the class is described as those persons who had been "denied promotions." ... An estoppel by judgment, which has the effect of preventing the adjudication of a claim on its merits, should be more certain than that. This Court holds that Peyton's individual claim and his claim on behalf of an asserted

demotion class are not barred by res judicata.

Judge Arnold was reasoning that Peyton's claim was dismissed in *Hoard* because it was a claim for demotion and was therefore not within the promotion class. The clear implication of that reasoning is that a claimant in *Hoard could not* assert a demotion claim.

One final note with respect to the claim of Ms. Hinton: The defendant points out that her claim only alleges termination and not demotion. The plaintiff points out that the records indicate that she was in fact demoted during the relevant time period. The Court is unwilling to dismiss her *pro se* claim form because the nature of her grievance is not specified. If she is a member of the demotion class, she is entitled to have her claim litigated.

The motion to dismiss these two claims will therefore be denied.

*Violet G. Allen*

The motion to dismiss this claim presents a different but related issue.

Ms. Allen also opted into the discharge class in *Hoard.* Like the previous two claimants, the court ruled that her termination was not the result of racial discrimination. 450 F.Supp. at 1065. For the reasons expressed above, that dismissal does not bar the demotion claim in this lawsuit.

On June 27, 1980, after she filed her pending claim in this action, Ms. Allen filed another lawsuit against Teletype alleging that she was discriminated against in her discharge and other terms and conditions of employment, including her demotion. The defendant moved to dismiss, based in part on the *res judicata* effect of the *Hoard* judgment. The plaintiff did not respond to the motion but some months later filed a motion for a voluntary dismissal. The defendant urged that any dismissal be granted only with prejudice.

On February 4, 1981, this Court dismissed the complaint with prejudice stating: "For the reasons given in the defendants' Motions to Dismiss, the Court concludes that

the defendants are entitled to have the complaint dismissed with prejudice. The plaintiff has offered no reasons for denying the defendants' Motion or for refusing to dismiss the complaint with prejudice."

The defendant argues that that dismissal precludes any demotion claim in this lawsuit. Ms. Allen argues that that dismissal did not affect her demotion claims. She states that her demotion, which lasted from August of 1973 through 1975, could not have been asserted as a ground for relief in the 1980 lawsuit because it was barred by the three year statute of limitations. Ark. Stat.Ann. § 37–206 (Repl.1962). Therefore, she argues that this Court's dismissal of February 4, 1981, only affected her claim of discriminatory discharge.

At the time Ms. Allen filed her separate lawsuit in this Court, she had already filed her claim as a member of the demotion class in *Taylor*. The defendant noted that fact in its motion to dismiss. The fact that her class claim was pending in *Taylor* was one of the reasons that the Court dismissed her individual suit with prejudice. She is therefore entitled to pursue her individual claim here, as a member of the demotion class. While that claim precludes a separate individual lawsuit filed in her behalf, the converse is not true. The fact that her class claim was pending at the time the individual lawsuit was filed prevents the dismissal with prejudice from barring the pending claim.

*Susie Whittington*

■ Ms. Whittington was demoted on September 11, 1975. She subsequently filed a charge with the E.E.O.C., and received her right to sue letter on July 29, 1972. She did not file suit, or move to intervene in any pending litigation, within 90 days of receipt of the letter. The defendant therefore argues that her claim of discriminatory demotion is barred by the express terms of Title VII.

While not conceding the point, the plaintiffs do not controvert the defendant's allegation that Ms. Whittington's Title VII claim is barred. Instead, it is argued that her demotion claim may proceed under 42

U.S.C. § 1981. The three year statute of limitations for section 1981 actions was used to establish the time perimeters of the class. The plaintiffs point out that the original complaint alleging class claims was based in part on section 1981. That complaint was filed on February 28, 1977. The three year statute of limitations allowed Ms. Whittington until September 1, 1978, to file a section 1981 claim. Because the class complaint was filed within the three year period, plaintiffs argue that Ms. Whittington was entitled to wait until the Court certified the class on June 5, 1979. Once that class was certified, plaintiffs contend that Ms. Whittington came within the purview of the class action and there was, therefore, no need to file an individual section 1981 action.

The defendant argues that Judge Arnold's opinion precludes the assertion of any section 1981 claims. Specific reference is made to the claims of intervenors Donley and Kennard. The demotions of these two claimants occurred before February 28, 1974, and therefore precluded membership in the class. Judge Arnold noted that any claims would have to be for individual relief. Both claimants had failed to file charges with the E.E.O.C., however, and Judge Arnold therefore dismissed their individual claims for relief. In a footnote to that dismissal it was noted:

Nor would these claims fare any better under 42 U.S.C. § 1981, which intervenors also pleaded by reference to the original complaint. Assuming that a 1981 claim would not be time-barred by the Arkansas three-year statute of limitations, Messrs. Donley and Kennard have not sustained the burden of showing purposeful discrimination, which is an element of a 1981 claim, as distinguished from Title VII. Mr. Kennard's demotion was part of a good-faith reduction in force and did not violate the collective-bargaining agreement. Mr. Donley's demotion may have been in violation of the agreement; he claims that the man who "bumped" him had had no previous experience as a plater. He had, however, had

experience as a heat treater, a job in the same department, and he had been a supervisor of platers. The company treated that experience as sufficient, and this Court is unable to say that this judgment was infected by conscious racial motives. 475 F.Supp. at 965, n. 2 (citations omitted).

On the basis of the above, the defendant argues that "any claim based on § 1981 may not be litigated herein and is foreclosed by the findings of Judge Arnold." The Court disagrees. Judge Arnold looked to the facts of the individual cases to determine if there was, in fact, evidence of purposeful discrimination. Thus the dismissals of the section 1981 claims were on their merits. Indeed, Judge Arnold apparently recognized that section 1981 claims may be asserted in this litigation when he noted that the intervenors also pled that claim "by reference to the original complaint." That is precisely the mechanism by which the claimant Whittington attempts to litigate her section 1981 claim in these proceedings.

The defendant does not dispute the plaintiff's analysis that the filing of the motion for class certification tolled the statute of limitations, or that the certification of the class obviated the need for the filing of an individual lawsuit or a motion to intervene on Ms. Whittington's behalf. The Court concludes that the plaintiff's legal analysis is correct. *See, e.g., American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (the commencement of the original class action tolls the running of the statute of limitations (Title VII), for all purported members who make timely motions to intervene after class certification is denied); *Parker v. Crown, Cork & Seal Co.,* 677 F.2d 391 (4th Cir.1982) (the running of the 90 day period for commencing a Title VII action was tolled during the period in which a motion for class certification was pending, where plaintiff was a member of the putative class, and filed a timely individual lawsuit after the motion for class certification was denied).

The motion to dismiss the claim of Susie Whittington will be denied. She may pro-ceed in her claim only on the basis of 42 U.S.C. § 1981 and not Title VII. Accordingly, the magistrate must apply the legal principles and minimum requirements of a section 1981 lawsuit. Specifically, the plaintiff must establish that she was the victim of *purposeful* discrimination. Because Ms. Whittington is proceeding as a section 1981 claimant, she is not the beneficiary of Judge Arnold's finding of classwide discrimination. Accordingly, Ms. Whittington will have the same burden of proof of establishing her claim as any other section 1981 plaintiff. The first part of this memorandum discussing the appropriate burden of proof is therefore not applicable to Ms. Whittington's claim.

*Alvin Allison, Eddie Day, Shapan Kelly, Betty Williams, Betty James, Geraldine McGee, Bernice Wallace*

■ The defendant moves for partial dismissals of these claims. While conceding that all these claimants were demoted during the relevant time frame, the defendant points out that their claim forms allege discrimination in layoffs, recall practices, voluntary resignations, and lack of advancement. The defendant asks the Court to dismiss all claims based on such allegations and restrict the scope of the hearing concerning these claims to the circumstances surrounding their demotions.

The plaintiffs respond by arguing that but for the alleged discriminatory demotions, the layoffs, discharges, etc., would never have occurred.

The Court rejects the plaintiffs' argument. While the assertion may be true, it is based only on conjecture. Furthermore, the class consists only of demotees. Subsequent claims of discrimination in layoffs or terminations are not relevant to the question of whether the demotions were discriminatory, even if it is assumed that they are the direct result of the demotions.

The plaintiffs also argue that if the demotions are found to be discriminatory, the proper remedy will be reinstatement with back pay. If that is the case, they argue, the Court must necessarily consider the layoff claims. This argument ignores that the determination of liability, regardless of any

question of remedies, is to be based solely on whether a demotion was unlawful. Whether the remedy for a layoff would be the same as a remedy for a demotion is irrelevant. In sum, Judge Arnold's definition of the class in this case precludes the magistrate from considering allegations other than those concerning demotions.

Pursuant to this Memorandum, the following is hereby Ordered:

1. The defendant's motion to dismiss the claim of Hattie M. Bridges is granted;

2. The defendant's motions to dismiss the claims of Sharon Greene, Paulette Hinton, Violet G. Allen, and Susie Whittington are denied;

3. The defendant's motions to partially dismiss the claims of Alvin Allison, Eddie Day, Shapan Kelly, Betty Williams, Betty James, Geraldine McGee, and Bernice Wallace are granted;

4. The class claims are hereby referred to a United States Magistrate for disposition. The clerk is hereby directed to draw the name of a magistrate and refer the pending class claims to him;

5. The magistrate's procedure for litigating these claims, and the standards by which he shall make his rulings, are to be governed by the principles stated in this memorandum;

6. The magistrate to whom these claims are assigned shall, in cooperation with the parties, establish a hearing date and set an appropriate deadline for discovery.

## ON MOTION TO AMEND AND/OR CLARIFY

Pending before the Court is the plaintiffs' Motion to Amend and/or Clarify

Memorandum and Order. For the reasons set forth below the motion is granted.

Plaintiffs filed this motion on July 12, 1982, following the Court's June 18, 1982, Memorandum and Order. That Memorandum and Order outlined the relevant facts and history of this litigation and ruled on the nature of the proof that members of a previously certified class [1] had to establish for purposes of asserting their individual claims. It also ruled on defendant's motions to dismiss a number of individual claims.

In connection with one of the individual claims that defendant sought to dismiss, that of Ms. Susie Whittington, the Court refused to order a dismissal, but held that Ms. Whittington could proceed only on the basis of 42 U.S.C. § 1981 (1976) rather than on the basis of 42 U.S.C. § 2000e-5 (1976) (Title VII).[2]

The Court noted further that in adjudicating Ms. Whittington's claim,

the magistrate must apply the legal principles and minimum requirements of a section 1981 lawsuit. Specifically, the plaintiff must establish that she was the victim of *purposeful* discrimination. Because Ms. Whittington is proceeding as a section 1981 claimant, she is not the beneficiary of Judge Arnold's finding of class-wide discrimination. Accordingly, Ms. Whittington will have the same burden of proof of establishing her claim as any other section 1981 plaintiff. The first part of this memorandum discussing the appropriate burden of proof is therefore not applicable to Ms. Whittington's claim.

(June 18th Memorandum and Order at 791.) This ruling and the issues that have

1. At an earlier stage of this litigation, the Honorable Richard S. Arnold determined that black employees of the defendant corporation who had been demoted between February 28, 1974, and the end of 1976 comprised a class that had made out a prima facie case of racial discrimination. *Taylor v. Teletype, Inc.*, 475 F.Supp. 958, 964 (E.D.Ark.1979), *aff'd in part, rev'd in part*, 648 F.2d 1129 (8th Cir.1981).

2. Ms. Whittington's employment situation varied slightly from that of several other class

claimants. Although she was demoted on September 11, 1975, and therefore fell within the certified class, she failed to file suit or move to intervene in any pending litigation within ninety days of receiving her right to sue letter from the E.E.O.C. Defendant claimed, and plaintiffs did not controvert this claim, that Ms. Whittington was barred from seeking recovery under Title VII. *See* June 18th Memorandum and Order at 14.

emanated from it form the basis of the motion that is currently before the Court.

Plaintiffs contend that the Court's Order creates an erroneous distinction between section 1981 claimants, such as Ms. Whittington, and the Title VII claimants, who are now entitled to proceed on their individual claims without first having to establish their own prima facie case of discrimination. Plaintiffs suggest that the high standard of proof met by the Title VII claimants was sufficient to meet any special threshold requirements placed upon section 1981 claimants. Plaintiffs conclude that Ms. Whittington should be allowed to forego the necessity of establishing a prima facie case of·a section 1981 violation.

Defendant raises three arguments in response: first, that plaintiffs' motion is not timely filed; second, that Judge Arnold's opinion [3] categorically precludes a finding of discrimination under section 1981 for *any* claimant; and, third, that the standards of proof for section 1981 claims and the Title VII claims brought by the class are not identical. Defendant concludes that each of these arguments requires the Court to find that Ms. Whittington must independently establish a prima facie case of discrimination under section 1981.

█ The Court is not persuaded by the defendant's timeliness contentions. Although defendant is correct in noting that motions filed pursuant to Rules 52 or 59 of the Federal Rules of Civil Procedure must be made within ten days of a court's action, the defendant has apparently mischaracterized the instant motion as falling within the parameters of those two rules. To date, there has been no entry of judgment from which the ten day amendment period would commence. Thus, the motion is not untimely, and this Court may agree to consider the motion at its discretion. *See Frantz Manufacturing Co. v. Phenix Manufacturing Co.,* 314 F.Supp. 99, 99–100 (E.D.Wis.1970).

Defendant's second contention is also unpersuasive. Although Judge Arnold denied the section 1981 claims of two intervenors,

he noted specifically that they were not members of the class for which the prima facie case of discrimination had been established. Since the two intervenors were outside of the class, they were required to make an independent showing of purposeful discrimination as applied to them. Judge Arnold ultimately found that they failed to sustain their evidentiary burden.[4] Ms. Whittington might have faced the same plight but for the fact that she is a member of the class. Therefore, the only question to be decided is whether as a member of that class, Ms. Whittington may invoke the prima facie finding of classwide discrimination in pursuing her section 1981 claim.

The Supreme Court recently clarified the evidentiary standard required for actions brought under section 1981. In *General Building Contractors Ass'n v. Pennsylvania,* ⸺ U.S. ⸺, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982), the Court drew upon the legislative history of the Civil Rights Act of 1866, 14 Stat. 27, to determine that "section 1981 reaches only purposeful discrimination." *Id.* at 3150. In order to find a violation of section 1981, a plaintiff must prove that the defendant possessed an intent to discriminate. *Id.* It is therefore clear that in order for Ms. Whittington to establish a prima facie case against the defendant, she must marshal proof of defendant's discriminatory intent. As noted above, she alleges that the previous finding of classwide racial discrimination, based upon Title VII, establishes the requisite basis for a prima facie finding of discrimination under section 1981.

To pass upon this claim it is useful to review the nature of the two fundamental forms of employment discrimination that violate Title VII: disparate impact and disparate treatment. Disparate impact occurs where employment practices "are facially neutral in their treatment of different groups, but . . . in fact fall more harshly on one group than another and cannot be justified by business necessity." *International Brotherhood of Teamsters v. United States,*

---

**3.** *See supra,* note 1.

**4.** *See* 475 F.Supp. at 965 & n. 2.

431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). By comparison, a disparate treatment violation arises where "an employer treats some people less favorably than others because of their race, color, religion, sex or national origin." *Id.*

While the two forms of discrimination sometimes prove difficult to distinguish, *see, e.g., Washington v. Davis,* 426 U.S. 229, 254, 96 S.Ct. 2040, 2054, 48 L.Ed.2d 597 (1976) (Stevens, J., concurring) ("the line between discriminatory purpose and discriminatory impact is not . . . bright"), the factual issues and character of the evidence presented differ substantially. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252 n. 5, 101 S.Ct. 1089, 1093 n. 5, 67 L.Ed.2d 207 (1981).

For purposes of this case, the critical distinction between the two theories is that whereas an action based upon the disparate treatment theory requires proof of discriminatory intent,[5] an action based upon the disparate impact theory requires no such proof. *Teamsters,* 431 U.S. at 335–36 & n. 15, 97 S.Ct. at 1854 & n. 15; *Marshall v. Kirkland,* 602 F.2d 1282, 1299 & n. 13 (8th Cir.1979); *Meyer v. Missouri State Highway Comm'n,* 567 F.2d 804, 807–08 (8th Cir.1977), *cert. denied,* 435 U.S. 1013, 98 S.Ct. 1888, 56 L.Ed.2d 395 (1978). *See also Griggs v. Duke Power Co.,* 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971) (absence of discriminatory intent is irrelevant in a disparate impact case).

Certain courts acting without the guidance of the Supreme Court's recent *General Building Contractors* decision have concluded that the standards of proof for both Title VII and section 1981 are the same. *See, e.g., Davis v. County of Los Angeles,* 566 F.2d 1334, 1340 (9th Cir.1977), *cert. granted,* 437 U.S. 903, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978), *vacated as moot,* 440 U.S. 625, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979); *Carter v. Gallagher,* 452 F.2d 315, 323 (8th Cir.1971), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); *Ingram v. Madison Square Garden Center, Inc.,* 482 F.Supp. 414, 423–24 (S.D.N.Y.1979); *Commonwealth of Pennsylvania v. Local Union 542, Int'l Union of Operating Engineers,* 469 F.Supp. 329, 400–01 (E.D.Pa.1978), *aff'd per curiam,* 648 F.2d 922 (3d Cir.1981); *rev'd sub nom., General Building Contractors Ass'n v. Pennsylvania,* —— U.S. ——, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). *See also* Note, *Section 1981: Discriminatory Purpose or Disproportionate Impact?,* 80 Colum.L.Rev. 137, 152–55 (1980). The central thrust of these decisions has been that a section 1981 claim may be based successfully on proof of discriminatory impact alone, and that therefore proof of discriminatory motive is unnecessary.

Other courts have adopted a less expansive view of the parallels between Title VII and section 1981. They have found that an action brought under section 1981 must be based upon proof of discriminatory intent and that therefore section 1981 and Title VII actions share the same legal standards only insofar as the Title VII claim is based on a disparate treatment theory. *See*

---

**5.** To meet his evidentiary burden, the plaintiff in a Title VII disparate treatment is not restricted to offering direct evidence of the defendant's subjective intent to discriminate. As *Teamsters* suggests, proof of discriminatory motive in Title VII actions may be inferred. 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15. *See also Personnel Adm'r. of Mass. v. Feeney,* 442 U.S. 256, 279 & nn. 24, 25, 99 S.Ct. 2282, 2296 & nn. 24, 25, 60 L.Ed.2d 870 (1979). Frequently, objective proof of differences in treatment can establish the requisite discriminatory intent; in fact, such objective proof of discriminatory intent may prove more probative than any subjective evidence. *Meyer,* 567 F.2d at 808 (quoting *Washington v. Davis,* 426 U.S. 229, 253, 96 S.Ct. 2040, 2054, 48 L.Ed.2d 597 (1976) (Ste-

vens, J., concurring)); *Hoard v. Teletype Corp.,* 450 F.Supp. 1059, 1067–68 (E.D.Ark.1978).

Such an analysis of the form of discriminatory intent evidence has been invoked for section 1981. In *Williams v. Trans-World Airlines, Inc.,* 507 F.Supp. 293, 304 (W.D.Mo.1980), *aff'd in part, rev'd in part on other grounds,* 660 F.2d 1267 (8th Cir.1981), the court noted that while section 1981 actions require proof of discriminatory intent, direct evidence is unnecessary. Instead a court may infer the requisite intent from the underlying circumstances, *id.,* including information derived from proper statistics. *Metrocare v. Washington Metropolitan Area Transit Auth.,* 679 F.2d 922, 930 & n. 12 (D.C. Cir.1982).

*Crawford v. Western Electric Co.,* 614 F.2d 1300, 1309 (5th Cir.1980); *Burris v. Davidson Transfer & Storage Co.,* 520 F.Supp. 935, 940 (D.Del.1981).

The confusion engendered by these conflicting decisions seems to have been the genesis of the dispute currently before this Court. For to the extent that there has been no clarification of which of the two Title VII theories has been established, one cannot determine whether a section 1981 prima facie case has likewise been established.

This Court acknowledges at the outset that the previous trial court opinion failed to specify which Title VII theory served as the basis for its finding of discrimination. One passage of the opinion seems to imply that the court was proceeding under a disparate impact theory. *See Taylor v. Teletype Corp.,* 475 F.Supp. 958, 964 (E.D.Ark. 1979), *aff'd in part, rev'd in part,* 648 F.2d 1129 (8th Cir.1981) ("There is no showing that the disparate impact of layoffs and demotions in 1975 was the result of a conscious effort to harm blacks as such."). The sentences immediately following that passage, however, seem to evince a finding of some intentional discrimination. *Id.* ("The fact remains, however, that blacks were harmed more than whites, and this harm cannot be ascribed entirely to the operation of a bona fide seniority system that had only the effect of perpetuating pre-Act discrimination. Here, a substantial amount of discrimination was still continuing as long as ten years after the [Civil Rights] Act was passed.") [6]

In any event, on appeal, the Eighth Circuit addressed the issue presented to this Court today and determined that the district court had made a finding of disparate treatment. 648 F.2d at 1132–33. The court noted the potential for confusion in light of the district court's reference to "disparate impact" in the above-quoted sentence. Nevertheless, in interpreting the district court's opinion, the Eighth Circuit stated:

> [I]n light of the opinion as a whole, we believe that the court merely expressed its belief that no direct evidence of conscious or malicious racial animus had been presented. The [district] court found, and we agree, that sufficient evidence existed to allow the court to make the necessary inference of discriminatory racial motivation.

*Id.* at 1133. Thus, the Eighth Circuit determined that objective proof of discrimination,[7] served as the basis for the finding of disparate treatment. Although this Court might disagree with the Eighth Circuit's analysis of Judge Arnold's decision in the district court, it must, of course, follow the Eighth Circuit Court's opinion and adopt the same position.

The remaining question to be decided is whether the previous finding of discriminatory intent, as subsumed in the prima facie finding of classwide disparate treatment under Title VII, corresponds to the form of discriminatory intent necessary for a violation of section 1981. If the two are equivalent, then the previous finding of discrimination under Title VII should render unnecessary an independent prima facie finding of discrimination under section 1981.

This Court finds nothing in the *General Building Contractors* decision to suggest that the discriminatory intent requirement for section 1981 differs from that required for Title VII disparate treatment cases under *Teamsters* and its progeny.[8] Numerous

---

**6.** A finding of intentional discrimination in *Hoard v. Teletype Corp.,* the case from which the instant lawsuit spawned, also serves to buttress the notion of intentional discrimination. *See* 450 F.Supp. at 1067–68.

**7.** The role that such objective evidence plays was discussed *supra* at note 5.

**8.** The Court in *General Building Contractors* phrased the inquiry as "whether § 1981 reach-

es practices that merely result in a disproportionate impact on a particular class, or instead is limited to conduct motivated by a discriminatory purpose . . . ." 102 S.Ct. at 3147–48. Such an analysis of the issue mirrors that noted in *Teamsters. See* 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854 n. 15. In spite of the language in *Teamsters* relating to the requisite proof for a

lower court decisions predating *General Building Contractors* suggest that the two intent requirements are essentially identical. *See, e.g., Metrocare v. Washington Metropolitan Area Transit Auth.,* 679 F.2d 922, 925 (D.C.Cir.1982); *Whiting v. Jackson State Univ.,* 616 F.2d 116, 121 (5th Cir. 1980); *Johnson v. Alexander,* 572 F.2d 1219, 1223 n. 3 (8th Cir.), *cert. denied,* 439 U.S. 986, 99 S.Ct. 579, 58 L.Ed.2d 658 (1978); *Burris v. Davidson Transfer & Storage Co.,* 520 F.Supp. 935, 940 (D.Del.1981), and this Court agrees. Therefore, since the previous prima facie determination of classwide discrimination in violation of Title VII rested upon a finding of discriminatory intent, then the requisite showing of intent for section 1981 purposes has been made. Plaintiff may consequently bootstrap her claim to the prima facie showing already made in the Title VII proceeding without having to make an independent showing of discriminatory intent.

Pursuant to the Memorandum, it is Ordered that plaintiffs' Motion to Amend and/or Clarify the Court's June 18th Memorandum and Order be, and it is hereby, granted. Plaintiff Susie Whittington will therefore be able to invoke the prima facie finding of classwide discrimination for purposes of making her section 1981 claim, subject to defendant's right to come forward with evidence to rebut this prima facie finding.

Title VII disparate treatment claim, defendant has argued that whereas proof of discriminatory motive is a "fundamental element" of a section 1981 action, it is not essential to a Title VII disparate treatment action. Defendant points to a passage in *Marshall v. Kirkland,* 602 F.2d 1282 (8th Cir.1979), as supporting that view:

Discriminatory purpose or motive is not a fundamental element in a Title VII action, however, though evidence of discriminatory motive may be critical to a Title VII's allegation of 'disparate treatment.'

*Id.* at 1299.

Although the Court acknowledges the potential for confusion on this matter, it finds defendant's assertion unpersuasive. The Eighth Circuit's passage was based upon a similar observation made by the Supreme Court in *Teamsters* where the Court sought to demonstrate the alternative means of proving discriminatory motive. *Id.* at 1299 n. 13. *See* 431 U.S.

at 335 n. 15, 97 S.Ct. at 1854 n. 15 ("Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.") (citations omitted). Reading the *Teamsters* footnote in its entirety, the Supreme Court did not appear to suggest that a proof of intent in a disparate treatment case is merely discretionary. Rather, the Court seemed to be expounding upon the same objective/subjective proof dilemma addressed in footnote 5 of this opinion.

It is important to note further that such is the very tack taken by the Eighth Circuit in *Kirkland.* *See* 602 F.2d at 1299 n. 13. In *Kirkland,* the court used the above-quoted statement to set up the distinction between constitutional employment discrimination claims, which always require proof of intent, and Title VII claims, which require such proof only in disparate treatment cases. *Id.* at 1299 & n. 13.